

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00217-CV

**IN THE INTEREST OF Z.R.F.M.**, Z.T.P., Z.R.N.R., and Z.J.A.P., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2021PA00613
Honorable Susan D. Reed, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
              Irene Rios, Justice
              Lori I. Valenzuela, Justice

Delivered and Filed: August 3, 2022

AFFIRMED

In this parental rights termination case, the trial court terminated Mom's parental rights to her children Z.R.F.M., Z.T.P., Z.R.N.R., and Z.J.A.P.[1]

Mom challenges the legal and factual sufficiency of the evidence for the trial court's finding on the best interests of the children.

Because the evidence was legally and factually sufficient to support the trial court's findings under the elevated evidentiary standards, we affirm the trial court's order.

## BACKGROUND

In this case, Mom is the only appellant, and we limit our recitation of the facts to those pertaining to Mom and the children.

---

[1] We use aliases to protect the children's identities. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

In early 2020, when Mom became homeless and was not able to care for her four children, then ages eleven, six, four, and two, Mom asked her mother, Grandma, to care for them.

## A. Grandma Cares for Children

Grandma took them in, and they lived with her for about one year. In March 2021, Mom went to her mother's home to try to pick up the children. Grandma resisted because Mom could not care for the children: she was homeless, unemployed, her car was uninsured, and she had no car seats for the children. As the Department investigated, Grandma cooperated only minimally. This raised concerns with the Department because Grandma had prior removal history, and Grandma tested positive for marijuana.

## B. Children Removed, Service Plan Created

On April 8, 2021, the Department petitioned for conservatorship, and it took the children into care. The Department created a service plan for Mom, which included the following required actions: complete psychological and psychosocial evaluations, engage in individual counseling, submit to and fully cooperate with a drug and alcohol assessment, engage in drug treatment classes, complete a drug treatment program and maintain sobriety, complete a parenting course, provide proof of income and employment status, obtain and maintain stable housing and employment, and demonstrate the ability to care for her children. Mom's service plan was approved by the court, and it ordered her to comply with the plan.

## C. Mom's Plan Compliance

Mom completed the psychological evaluation and the substance abuse assessment. Mom claimed she completed the iParent course, but the Department could not confirm that. For other ordered services, Mom was uncooperative.

When the Department tried to talk with Mom about drug testing and treatment, she repeatedly refused to be tested, and she sometimes threw objects at the case worker, slammed the

door, or stormed out of the office. In one meeting, she became very aggressive, "made a big scene in the office," and was cursing at the case worker.

**D.      Bench Trial**

After a virtual bench trial on the merits, the trial court found by clear and convincing evidence that Mom's course of conduct met the grounds in Family Code subsections 161.001(b)(1)(N), (O), and (P), and that terminating Mom's parental rights was in the children's best interests. The trial court terminated Mom's parental rights to Z.R.F.M., Z.T.P., Z.R.N.R., and Z.J.A.P., and it appointed the Department as the children's permanent managing conservator.

**E.      Mom's Appeal**

Mom filed a notice of appeal. She challenges the legal and factual sufficiency of the evidence on the best interests of the children. Before we address Mom's sole issue, we briefly recite the applicable evidentiary and appellate review standards.

**EVIDENCE REQUIRED, STANDARDS OF REVIEW**

"[I]n a bench trial, the judge as the trier of fact weighs the evidence, assesses the credibility of witnesses and resolves conflicts and inconsistencies." *In re S.J.R.-Z.*, 537 S.W.3d 677, 691 (Tex. App.—San Antonio 2017, pet. denied); *accord In re F.M.*, 536 S.W.3d 843, 844 (Tex. App.—San Antonio 2017, no pet.).

On review, an appellate court must not "substitute its own judgment for that of a reasonable factfinder." *In re Commitment of Stoddard*, 619 S.W.3d 665, 668 (Tex. 2020); *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

The evidentiary standard[i] the Department must meet and the statutory grounds[ii] the trial court must find to terminate a parent's rights to a child are well known, as are the legal[iii] and factual[iv] sufficiency standards of review. We apply those standards here.

**BEST INTERESTS OF THE CHILDREN**

In her only issue, Mom argues the evidence was legally and factually insufficient to support the trial court's finding that terminating her parental rights was in her children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We review the bases for the trial court's order.

**A.     Unchallenged Statutory Grounds Findings**

A single statutory ground finding, when accompanied by a best interest of the child finding, is sufficient to support a parental rights termination order. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re R.S.-T.*, 522 S.W.3d 92, 111 (Tex. App.—San Antonio 2017, no pet.).

Here, the trial court found Mom constructively abandoned the children, failed to comply with her Family Service Plan, used a controlled substance in a way that endangered the children, and failed to complete a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O), (P). Mom does not challenge any of those findings, and we need not address them. *See* TEX. R. APP. P. 38.1(f), (i); *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019). Instead, she challenges only the best interests finding.

**B.     Best Interest of the Child Factors**

The Family Code statutory factors[v] and the *Holley* factors[vi] for best interest of the child are well known. Applying the standards of review and the applicable statutory and common law factors, we examine the evidence pertaining to the best interests of the children.

The trial court heard the following testimony regarding the children's ages and vulnerabilities, Mom's course of conduct, and the children's placement.

**C.     Children's Ages, Vulnerabilities, and Desires**

At the time of trial, the children were twelve, seven, five, and four years old. Although the children do not have any special needs, they are not able to provide for themselves; they are living with Mom's sister, their aunt. They are strongly bonded to their aunt, they are very happy living

with her, and they all want to continue being placed with their aunt. The oldest child "is very, very bonded to the [aunt]," and she stated she does not want to return to live with Mom. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (5), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (A), (B), (D), (G)).

## D. Mom's History of Substance Abuse

Because of Mom's history of drug abuse, her service plan required her to submit to, and fully cooperate with, a drug and alcohol assessment; engage in drug treatment classes; and complete a drug treatment program and maintain sobriety. In a status hearing, Mom admitted using methamphetamines throughout the case. At trial, Mom initially denied, but then admitted, using methamphetamines during the case. Despite the trial court's order for her to submit to random drug testing, and the Department's repeated requests for Mom to be tested, Mom submitted to only one drug test over the period of about one year; it was positive for methamphetamine. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.) ("A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (same).

## E. Mom's Untreated Mental Illness

Mom was diagnosed with ADHD, depression, bipolar disorder, and intensive anger disorder. She first denied, then admitted, that she has cut herself and has said she wanted to kill herself. Her psychological evaluation recommended a psychiatric evaluation and treatment, but Mom did not complete the psychiatric evaluation, treatment, or counseling.

Mom resisted any type of help with arranging or receiving services. When asked why she is not getting mental health counseling, Mom said "I talk to my friends how I feel, and I tell the

counselor how I feel, so it's the same thing." She also rejected taking prescription medications for her mental illness because she does not want to "be a zombie or drugged up." *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (6), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d 471 (past conduct may recur); *Walker*, 312 S.W.3d at 617 (same).

### F. Prior Department, Criminal History

Mom had been referred to family-based safety services for negligent supervision three times prior to the children's removal. Mom has also had multiple assault charges and some charges for possession of a controlled substance. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (3), (7), (8), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)); *see also In re D.M.*, 452 S.W.3d at 471; *Walker*, 312 S.W.3d at 617.

### G. Mom's Visits with Children

Mom's service plan called for weekly visits with the children. From the time the children were removed until trial, Mom attended about half of her scheduled visits. Explaining her missed visits, Mom said she had COVID, which caused her to miss two months of visits, and other times she missed visits because her car broke down. For the visits she made, she repeatedly refused to follow the rules. She "would want to argue with [the case worker] during the visits instead of focusing on her time with the children." Further, during her visits (with the three youngest children), Mom paid attention to the youngest child, but she gave little attention to the older two. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (H)).

### H. Stable Housing

Before the children were removed, they had been living with Grandma for about one year because Mom was unemployed and homeless. To address that need, Mom's service plan required

her to locate and maintain stable housing for the children. Mom said she had been on the San Antonio Housing Authority waiting list for over two years, but she had still not been able to arrange for stable housing for the children. *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976) (factors (B), (C), (G), (H), (I)).

## I.     Providing for Children's Needs

Mom's service plan required her to obtain and maintain stable employment, provide proof of income and employment status, and demonstrate the ability to care for her children. Mom admitted she did not have a job, but she was trying to get one. She acknowledged that, at present, she was not receiving any kind of income, and she could not provide for her children. *See* TEX. FAM. CODE ANN. § 263.307(b)(11), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (G), (H), (I)).

## J.     Children's Placement

The children are currently living with their maternal aunt. The aunt is ensuring all the children's needs are met, including their physical and emotional needs, and she will be able to meet the children's needs in the future. She is working on obtaining foster home licensing; the children want to continue living with her, and she wants to adopt them. The children are very bonded to their aunt, and they are very happy living with her. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (12), (13); *Holley*, 544 S.W.2d at 372 (factors (A), (B), (C), (D), (F), (G)).

## K.     Ad Litem's Recommendation

The ad litem recommended that it was in the children's best interests that Mom's rights be terminated so that the children could continue to live with the aunt and be adopted by her. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (10), (11), (12); *Holley*, 544 S.W.2d at 372 (factors (B), (C), (D), (F), (G), (H)).

**L.      Sufficient Evidence**

The trial court could have believed the testimony about (1) Mom's admitted history with the Department; (2) Mom's criminal history; (3) Mom's admitted history of drug abuse; (4) Mom's resistance to treatment for her mental health issues; (5) Mom's failure to obtain employment and stable housing; and (6) Mom's problematic visits with the children. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844. It could also have believed the testimony that the children are doing well living with their aunt, she is meeting the children's present needs, and she will meet their future needs. *See In re S.J.R.-Z.*, 537 S.W.3d at 691; *In re F.M.*, 536 S.W.3d at 844.

Having reviewed the evidence under the appropriate standards, we conclude the trial court could have "reasonably form[ed] a firm belief or conviction" that it was in the children's best interests for Mom's parental rights to be terminated. *See In re H.R.M.*, 209 S.W.3d at 108 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence was legally and factually sufficient to support the trial court's best-interests-of-the-children finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

We overrule Mom's sole issue.

**CONCLUSION**

For the reasons given above, we affirm the trial court's order.

Patricia O. Alvarez, Justice

---

[i] Clear and Convincing Evidence. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002). The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[ii] Statutory Grounds for Termination. The Family Code authorizes a court to terminate the parent-child relationship if, inter alia, it finds by clear and convincing evidence that the parent's acts or omissions met certain criteria. *See* TEX.

FAM. CODE ANN. § 161.001(b). Here, the trial court found Mom's course of conduct met subsections (N), (O), and (P):

(N) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and:

(i) the department has made reasonable efforts to return the child to the parent;

(ii) the parent has not regularly visited or maintained significant contact with the child; and

(iii) the parent has demonstrated an inability to provide the child with a safe environment; [and]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child; [and]

(P) used a controlled substance, as defined by Chapter 481, Health and Safety Code, in a manner that endangered the health or safety of the child, and:

(i) failed to complete a court-ordered substance abuse treatment program; or

(ii) after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance.

*Id.* § 161.001(b)(1).

iii Legal Sufficiency. When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266). If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.*

iv Factual Sufficiency. Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.

v Statutory Factors for Best Interest of the Child. The Texas legislature codified certain factors courts are to use in determining the best interest of a child:

(1) the child's age and physical and mental vulnerabilities;

(2) the frequency and nature of out-of-home placements;

(3) the magnitude, frequency, and circumstances of the harm to the child;

(4) whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5) whether the child is fearful of living in or returning to the child's home;

(6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8) whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9) whether the perpetrator of the harm to the child is identified;

(10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

(A) minimally adequate health and nutritional care;

(B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

(C) guidance and supervision consistent with the child's safety;

(D) a safe physical home environment;

      (E)  protection from repeated exposure to violence even though the violence may not be directed at the child; and

      (F)  an understanding of the child's needs and capabilities; and

  (13)  whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE ANN. § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (recognizing statutory factors).

[vi] *Holley* Factors. The Supreme Court of Texas identified the following factors to determine the best interest of a child in its landmark case *Holley v. Adams*:

      (A)  the desires of the child;

      (B)  the emotional and physical needs of the child now and in the future;

      (C)  the emotional and physical danger to the child now and in the future;

      (D)  the parental abilities of the individuals seeking custody;

      (E)  the programs available to assist these individuals to promote the best interest of the child;

      (F)  the plans for the child by these individuals or by the agency seeking custody;

      (G)  the stability of the home or proposed placement;

      (H)  the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

      (I)  any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (footnotes omitted); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).